UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| D&B BOAT RENTALS, Inc. ) | |
| ) | |
|    Plaintiff, ) | |
| ) | Civil Action No. 18-623 |
| v. ) | |
| ) | Section "B" (5) |
| UNITED STATES OF AMERICA, ) | |
| NATIONAL POLLUTION FUNDS ) | Hon. Ivan L.R. Lemelle |
| CENTER and AMERICAN ) | |
| POLLUTION CONTROL CORP. ) | Hon. Michael B. North |
| ) | |
|    Defendants. ) | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT**

**Summary of the Argument**

On May 28, 2013, the OSV RICKY B, owned by Plaintiff D&B Boat Rentals, Inc. (D&B), was operating offshore in the Gulf of Mexico when it began to take on water. On May 29, the crew was forced to abandon the vessel, which they did safely. On May 30, the RICKY B sank to the bottom as it was being towed toward shore. D&B hired contractors to prevent fuel oil from leaking from the vessel into the ocean, to monitor the wreck, and to salvage it. One of those contractors, American Pollution Control Corporation (AMPOL), was not paid in full. AMPOL filed a claim with the U.S. Coast Guard National Pollution Funds Center (NPFC) seeking the remainder, which the NPFC did pay.

The NPFC demanded from D&B reimbursement of the amount that the NPFC had paid to AMPOL, $75,859, plus $2,204 in Coast Guard costs, for a total of $78,063. *See* ECF No. 9 (First Am. Compl.) ¶ 12 ("In February of 2017, the United States of America

through the NPFC sought reimbursement from D&B and its underwriters for the amounts paid to AMPOL."); ¶ 16 ("On February 24, 2017, the United States of America, through the NPFC, sent correspondence to D&B demanding reimbursement of the amounts the United States of America, through the NPFC, paid to AMPOL."). The NPFC made the demand pursuant to Section 2702 of the Oil Pollution Act of 1990 (OPA). *See* 33 U.S.C. § 2702 (rendering "each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters . . . liable for the removal costs and damages . . . .").

D&B brings suit to obtain a declaratory judgment holding that the United States is time-barred from pursuing *any* recovery against it. *See* ECF No. 9 (First Amended Compl.) ¶ 23 ("D&B asks this Court for judgment, holding that the United States of America is time-barred from proceeding against D&B or its underwriters by the three-year statutory limitation in 33 U.S.C. § 2717(f)(4).").

D&B is correct insofar as *judicial action* is concerned, though no such action is contemplated. The United States can, however, pursue an *administrative recovery* against D&B, which is all that the NPFC seeks to accomplish. The Supreme Court spoke to this issue in *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 93 (2006), holding that "the fact that the statute of limitations bars a government suit to collect an amount due to it does not bar the government from invoking its administrative remedies to offset the indebtedness against other claims by the debtor." In other words, the NPFC can refer the debt to the U.S. Department of Treasury, which may take an offset against any sum otherwise payable by the federal government to D&B.

D&B alleges that the Declaratory Judgment Act and OPA waive the federal government's sovereign immunity. But, as will be shown, neither statute does. Accordingly, the United States moves for dismissal of D&B's claims. And although D&B does not explicitly identify the Administrative Procedure Act (APA), the APA may waive sovereign immunity in this case. Stated another way, the NPFC's decisions to pay AMPOL's claim and to seek reimbursement from D&B are agency actions reviewable, if at all, under the APA. Indeed, D&B seems to reference the APA's standard of review when it contends that the NPFC acted in an "arbitrary and capricious" manner by paying claimant AMPOL. *See* ECF No. 9 (First Am. Compl.) ¶¶ 17 & 24. D&B further argues that the NPFC's determination, which led to that payment, violated D&B's due process rights. *Id*. ¶¶ 17 & 25. Unsurprisingly, the United States believes the payment was proper.

Be that as it may, the United States moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Neither the Declaratory Judgment Act, nor OPA, waive sovereign immunity here.

## Background

### I. The Sinking and Salvage of the OSV RICKY B

This is not the first case to arise from the May 29, 2013 sinking of the OSV RICKY B. D&B and its insurer, Lloyd's Syndicate 1861, unsuccessfully sued Crosby Tugs, L.L.C., to recoup costs associated with lifting the RICKY B from the bottom of the Gulf of Mexico. *See Lloyd's Syndicate 1861 & D&B Boat Rentals, Inc. v. Crosby Tugs, L.L.C.*, No. 14-30888, (5th Cir. Apr. 21, 2015) (per curiam), ECF No. 00513013120 (affirming this Court's decision in that case). As a result, there are few, if any, facts in

dispute. D&B Boat Rentals, Inc., a Lafayette, Louisiana company, owned the RICKY B, a steel-hulled offshore supply vessel built in 1981. *Lloyd's Syndicate 1861*, No. 13-5551 (E.D. La.), ECF No. 70 (Findings of Fact (FoF) & Conclusions of Law (CoL)) at 1-2. Louisiana Marine Operators operated the vessel. *Id*. at 4.

On May 28, 2013, the RICKY B was servicing drilling platforms in the Gulf of Mexico. *Id*. at 3. The vessel began to take on water through the starboard stuffing box.[1] *Id*. The next day, May 29, the RICKY B e-mailed Louisiana Marine Operators to advise that the vessel was in the Vermillion Block 171 area, that the engine room was flooded, and that the vessel was sinking. *Id*. at 4. As the condition of the vessel continued to deteriorate, a distress call was made to the Coast Guard. *Id*. at 4-5. A nearby vessel came to assist, took the crew off, and deposited them on a nearby manned oil platform. *Lloyd's Syndicate 1861*, ECF No. 45 (Pls.' Proposed FoF & CoL) ¶ 9.

Early on May 30, a vessel called "[t]he DELTA FORCE began towing the RICKY B toward Morgan City, in the direction of shallower waters." *Lloyd's Syndicate 1861*, ECF No. 70 (FoF & CoL) at 14. The flotilla had covered about thirteen miles when the RICKY B succumbed and sank completely. *See Lloyd's Syndicate 1861*, No. 14-30888, ECF No. 00513013120 at 2. As mentioned, the RICKY B's owners and underwriters hired several contractors to prevent fuel from leaking from the vessel into the ocean, to monitor the wreck, and to salvage it. *See* ECF No. 9 (First Am. Compl.) ¶ 2 ("The owners of the M/V RICKY B, D&B Boat Rentals, L.L.C., and its underwriters, engaged multiple

---

[1] A stuffing box seals a vessel's propeller shaft where it enters the hull, keeping water out while allowing the shaft to turn.

companies to address the sinking, including removing the vessel and monitoring for pollution.").

D&B contracted with AMPOL "to provide pollution response and security" and "to monitor the wreck of the M/V RICKY B for pollution." *Id*. ¶¶ 3-4. Afterward, "AMPOL presented $240,488.51 in invoices to D&B and its underwriters, of which D&B and its underwriters paid $164,629.51." *Id*. ¶ 8. According to D&B, the short-payment was warranted because AMPOL "did not stay at the wreck of the M/V RICKY B," *id*. ¶ 5, and "it failed to mark the M/V RICKY B adequately." *Id*. ¶ 6. D&B contends that, as a result, "D&B and D&B's underwriters were required to expend additional funds to locate the M/V RICKY B because of AMPOL's failures." *Id*. ¶ 7.

## II.    Agency Action

AMPOL submitted a claim to the NPFC seeking reimbursement for its uncompensated removal costs. *See* ECF No. 9 (First Am. Compl.) ¶ 10 ("AMPOL submitted its unpaid invoices to the United States of America through the National Pollution Funds Center (NPFC)."). After review of the claim, D&B's comments, and other materials, the NPFC approved AMPOL's claim. *See id*. ¶ 11 ("On April 29, 2014, the United States of America through the NPFC approved AMPOL's claim.").

Almost three years later, the NPFC issued a Notice of Potential Liability, which identified D&B as the owner or operator of the RICKY B and stated that D&B may be liable for the resulting removal costs and damages. *See id*. ¶ 12 ("In February of 2017, the United States of America through the NPFC sought reimbursement from D&B and its underwriters for the amounts paid to AMPOL."); ¶ 16 ("On February 24, 2017, the United

States of America, through the NPFC, sent correspondence to D&B demanding reimbursement of the amounts the United States of America, through the NPFC, paid to AMPOL.").

D&B disputed the NPFC's request for payment, setting forth its arguments in detail. *See* ECF No. 9 (First Am. Compl.) ¶ 17 ("On August 7, 2017, after receiving the claims file through a Freedom of Information Act (FOIA) request, D&B and its underwriters sent correspondence to the United States of America through the NPFC outlining why the NPFC's determination to pay AMPOL was arbitrary and capricious, why it lacked due process, and why it was time-barred.").

Two days later, the NPFC sent D&B a letter advising that the NPFC would reassess its determinations in light of the concerns raised and stating that the agency would perform an administrative review of its debt determination. That review followed, with the NPFC affirming its original decision. *See id.* ¶ 18 ("On December 20, 2017, the United States of America, through the NPFC, responded and indicated its 'determination is that NPFC invoice 914014-001-17 dated August 3, 2017, is valid and owing.'").

## Discussion

### I. Standard of Review

Federal courts are of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). One who invokes the jurisdiction of a federal court must be able to successfully defend the invocation. *See Dow Agrosciences, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003). D&B's complaint, though it hints at the APA's applicability in using the words

"arbitrary and capricious," *see* ECF No. 9 (First Am. Compl.) ¶¶ 17 & 24, does not actually identify the APA as a waiver of sovereign immunity.

### A.     Rule 12(b)(1) Motion to Dismiss

As discussed below, neither OPA, nor the Declaratory Judgment Act, vest the Court with subject matter jurisdiction.  When a court appears to lack statutory or constitutional power to adjudicate a case, an opposing party may move to dismiss the cause under Rule 12(b)(1).  *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

When, as here, a Rule 12(b)(1) motion is filed in conjunction with another Rule 12 motion, the court should first consider the Rule 12(b)(1) jurisdictional attack.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

### B.     Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.  A district court should not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.  *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 351 (5th Cir. 2003).

"As a practical matter, a 12(b)(6) dismissal should only be granted where a plaintiff pleads himself out of court on the face of the complaint." *Najar v. Chertoff*, No. 9:07-cv-150-TH, 2008 WL 11347939, at *4 (S.D. Tex. Mar. 31, 2008) (citing 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357).  Here, Plaintiff D&B

does exactly that. D&B describes agency action by the NPFC, cites two statutes that do not waive sovereign immunity, and yet fails to identify the APA, which may.

## II. Neither the Oil Pollution Act of 1990, nor the Declaratory Judgment Act, Waive the United States' Sovereign Immunity

The United States is immune from suit absent a valid waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction); *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994) ("The United States may not be sued except to the extent that it has consented to such by statute."). Waivers of the federal government's immunity must be unequivocally expressed in statutory text and cannot be implied or inferred. *See Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992).

### A. The Oil Pollution Act of 1990

D&B identifies the Oil Pollution Act of 1990 (OPA), 33 U.S.C. §§ 2701-62, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, as applicable waivers of sovereign immunity. *See* ECF No. 9 (First Am. Compl.) ¶ 19 ("D&B brings this action under 28 U.S.C. § 2201, the declaratory judgment act."); ¶ 20 ("This Court has subject matter jurisdiction because the controversy in question involves the United States government, and under the Oil Pollution Act."). These assertions are misplaced.

OPA provides that "the United States district courts shall have exclusive original jurisdiction over all controversies under this Act." 33 U.S.C. § 2717(b). But the mere placement of original jurisdiction in the federal district courts does not waive the United States' immunity. *See Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385

(5th Cir. 1989) (although Section 113 of CERCLA grants the United States district courts original jurisdiction over all controversies arising under CERCLA, it contains no general waiver of the United States' sovereign immunity); *Int'l Marine Carriers v. Oil Spill Liability Trust Fund*, 903 F. Supp. 1097, 1101 (S.D. Tex. 1994) (OPA section 1017(b) is merely a "grant of original jurisdiction; it does not provide for judicial review of claims against the Fund."); *Rick Franklin Corp. v. U.S. Dep't of Homeland Sec.*, No. 06-1647-SU, 2008 WL 337978, at *3 (D. Or. Feb. 4, 2008) ("The OPA does not contain a waiver of the government's sovereign immunity from suit.").

### B. The Declaratory Judgment Act

Likewise, the Court lacks jurisdiction over D&B's claims under the Declaratory Judgment Act. 28 U.S.C. §§ 2201-02. That Act simply authorizes a federal court to grant declaratory relief where subject matter jurisdiction, a waiver of sovereign immunity, and a cause of action are otherwise established. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (Declaratory Judgment Act does not provide a "right of entrance to federal courts"); *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956) (Declaratory Judgment Act does not operate as a waiver of sovereign immunity).

Even if the Court were inclined to enter a declaratory judgment, it would not be the kind of judgment that D&B wants. The declaration that D&B seeks is improper because it would misstate the law. Simply put, an administrative recovery is not subject to a statute of limitations. *See* 31 U.S.C. § 3716(e)(1) ("Notwithstanding any other provision of law, regulation, or administrative limitation, *no limitation on the period within which an offset may be initiated or taken pursuant to this section shall be effective*.") (emphasis added);

9

31 C.F.R. § 285.5(d)(3)(v) (debt can be collected through centralized offset "irrespective of the amount of time the debt has been outstanding). *See also BP Am. Prod. Co. v. Burton,* 549 U.S. 84, 96-99 (2006) (statutory limit on a judicial remedy does not preclude non-judicial, administrative remedy); *United States v. Moriarity*, 8 F.3d 329, 334 (6th Cir. 1993) ("[A]lthough the United States may be precluded by the applicable statute of limitations from bringing an action for money damages, it continues to have a 'right to payment' against the debtor in this case and thus may enforce that right in other ways."); *Thomas v. Bennett*, 856 F.2d 1165, 1169 (8th Cir. 1988) (the statute of limitations in 28 U.S.C. § 2415(a) "merely eliminates one potential remedy" to collect a debt).

Based on the foregoing, the government moves for dismissal of D&B's claims based on OPA and the Declaratory Judgment Act. Neither statute waives sovereign immunity, and in relying on them D&B fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) & 12(b)(6) (failure to state a claim upon which relief can be granted).

## Conclusion

As neither the Oil Pollution Act of 1990 nor the Declaratory Judgment Act waive sovereign immunity, the government respectfully moves for dismissal of D&B's claims.

Date: June 15, 2018

                                            Respectfully submitted,

                                            CHAD A. READLER
                                            Acting Assistant Attorney General

                                            DUANE A. EVANS
                                            Interim United States Attorney

                                            */s/ Michael A. DiLauro*
                                            MICHAEL A. DiLAURO
                                            Senior Admiralty Counsel
                                            Aviation & Admiralty Litigation
                                            Torts Branch, Civil Division
                                            U.S. Department of Justice
                                            (overnight courier)
                                            175 N St., N.E., Ste. 8.1815
                                            Washington, D.C. 20002
                                            (mailing)
                                            P.O. Box 14271
                                            Washington D.C. 20044-4271
                                            Telephone: (202) 616-4047
                                            Facsimile: (202) 616-4159
                                            michael.dilauro@usdoj.gov

Of Counsel:

| | |
|---|---|
| LT Glenn Gray, USCG | Patricia Kingcade |
| U.S. Coast Guard | U.S. Coast Guard |
| Office of Claims & Litigation | National Pollution Funds Center |

## CERTIFICATE OF SERVICE

It is hereby certified that on June 15, 2018, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

>Harry E. Morse
>HARRY MORSE, L.L.C.
>650 Poydras Street, Suite 2710
>New Orleans, LA 70130
>Tel. (504) 799-3141
>harry@harrymorse.com
>Counsel for D&B Boat Rentals, Inc.

>*/s/ Michael A. DiLauro*
>MICHAEL A. DiLAURO
>Senior Admiralty Counsel